**FILED**

**SEPTEMBER 30, 2009**

KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JERRY TYRONE HASTY, PRO SE, | § | |
| also known as | § | |
| JERRY TYRONE HASTY HALIBURTON, | § | |
| TDCJ-CID No. 1142541, | § | |
| Previous TDCJ-CID No. 538768, | § | |
| Previous TDCJ-CID No. 338484, | § | |
| Previous TDCJ-CID No. 370549, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:09-CV-0077 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| BRIAN RODEAN, JOE GRIMES, | § | |
| LEVIN R. FULLER, NFN BRIDGEWATER, | § | |
| CHAD D. BRENNER, JOHN W. MAYS, | § | |
| ROY L. ALMAROAD, ROBERT B. NIXON, | § | |
| MAYO R. McLAUGHLIN, | § | |
| ANDREW CRANDALL, DORA V. SHIPP, | § | |
| MARY T. HOLLIGAN, RENEE REINING, | § | |
| RHONDA GLOVER, PAUL SLOAN, | § | |
| JULITO P. UY, JOANN POPE, | § | |
| LISA WILLIAMS, CYNTHIA A. HARRELL, | § | |
| V. L. BRISHER, NFN GALLAGHER, | § | |
| JAMES MILLER, BARBARA HEIB, | § | |
| RAYMOND L. SOTO, | § | |
| GREGORY C. BOLAND, | § | |
| MARTHA E. MAES, DAVID L. EZZELL, | § | |
| DIANA COLE, DR. CARL PAETZOLD, | § | |
| THOMAS GOBLE, NFN MARTINEZ, | § | |
| and NFN TRAN, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff JERRY TYRONE HASTY, acting pro se and while a prisoner confined in the

Texas Department of Criminal Justice, Institutional Division, has filed suit pursuant to Title 42,

United States Code, section 1983 complaining against the above-referenced defendants and has

been granted permission to proceed *in forma pauperis*.

Plaintiff states that, on September 18, 2007, defendant MAYS was working in the control

picket when he signaled to the inmates in the dayroom, including plaintiff, to leave the dayroom

and get their necessities, that is, their daily clothes.  Plaintiff alleges defendant MAYS failed to

follow prison guidelines concerning inmate ingress/egress, only opened the electronic door

halfway and closed it before plaintiff, who was last to leave the dayroom, was all the way

through.  Plaintiff states defendant ALMAROAD saw what had happened and ordered MAYS to

open the door.

Plaintiff was taken to the front desk by defendant ALMAROAD who told defendant

NIXON that MAYS had shut plaintiff in the door and plaintiff needed medical attention.

Plaintiff says defendant BRIDGEWATER arrived and asked him what happened and, when he

told her, she responded that plaintiff has failed to follow safety procedures by going through a

door that was only half open.  Plaintiff responded it was MAYS' fault for not opening the door

completely and not using sufficient care before closing it.

A wheelchair was requested and plaintiff was taken to the infirmary where he was

examined by a nurse who said the rib didn't look right but that there wasn't a doctor or anyone to

take x-rays at that time.  She gave plaintiff an ice pack and two packages of Ibuprofen, told

plaintiff not to lay on his injured side, and said she would schedule him to see the doctor.

Plaintiff walked back to his cell and stayed there all the next day because of his pain, not even

going to chow.  That evening defendant McLAUGHLIN asked plaintiff if he was all right and,

upon hearing of plaintiff's injury, took him to the front desk where defendant CRANDALL sent

plaintiff to the infirmary.  A brace was put on plaintiff at the infirmary.  Defendant GLOVER,

the Assistant Director of Nurses, examined plaintiff and authorized his transport to Northwest

Texas Hospital.  There, plaintiff was seen by defendant Dr. PAETZOLD, who ordered x-rays to

make sure his lung and kidney had not been punctured.  Defendant Dr. PAETZOLD informed

plaintiff his rib was broken but there was no puncture.  He told plaintiff there was nothing else to

do and that the rib would heal on its own, but the first two or three weeks were be difficult and

plaintiff needed to rest as much as possible.  He said he would prescribe Tylenol 3 for pain.

Plaintiff further alleges he saw defendant Dr. UY on September 24, 2007.  Plaintiff

complains Dr. UY was late and, after examining plaintiff, ordered x-rays.  Plaintiff claims

defendant RENEE REINING of radiology didn't have him lie down for the x-ray, even though

he was in pain, and squeezed his rib, causing him more pain.  He alleges defendant UY, upon

examining the x-rays, opined plaintiff had a bruised rib, not a broken rib.  When plaintiff

complained of pain, defendant UY said he was prescribing plaintiff Naproxen 500 mg., but

plaintiff complains he didn't receive it until two weeks later.  Plaintiff claims UY and REINING

did not respond appropriately to his serious medical needs.

Plaintiff alleges that, nine days after the incident, defendant HOLLIGAN assigned him to

a job as a kitchen helper.  Plaintiff alleges she did this "hoping that [he] would refuse . . .

knowing that [he was] hurt so that they could write [him] a case for refusing to obey an order"

and demote him from S4 Line 1-G2 to a G4.  Plaintiff alleges "this is pure retalition [sic] and

harassment."  Plaintiff alleges defendant HOLLIGAN failed to follow proper procedures and

knowingly violated his medical restriction of no repetitive use of the hands because every job in

the kitchen requires repetitive hand use and assigned him the job knowing he had been injured.

Plaintiff says he turned out for his job October 5, 2007 and talked to the "F.S.M.[1]," who told him all he could do was send plaintiff to the infirmary. Plaintiff says that, at the infirmary, he was seen by Sr. L.V.N. WILLIAMS who gave him a cell pass which lasted from October 5th through October 9th. Plaintiff says that, after that, the more he complained, the more he was harassed and retaliated against with disciplinary cases for refusing to work.

Plaintiff claims that he was written a disciplinary case by defendant BARBARA HEIB for failing to show his I.D. at bed count when he fell asleep because of his psychiatric medication after having to stay awake for a lab lay-in.

Plaintiff states he submitted a step 1 grievance on September 20, 2007. He says that same day, defendant GALLAGHER escorted him to defendant Capt. BRENNER's office where BRENNER took plaintiff's statement as part of his investigation of plaintiff's grievance. Plaintiff complains BRENNER rushed plaintiff's account of the incident and didn't seem to want to listen to his entire statement and that BRENNER criticized defendant GLOVER for authorizing plaintiff's transport to the hospital.

Plaintiff alleges defendant FULLER failed to investigate and take remedial action after he was informed of the incident, but, instead, told plaintiff he had plaintiff's grievance and plaintiff's letter to defendant RODEAN about the incident and was finishing the paperwork to close the matter out. Plaintiff claims he has suffered retaliation from "all staff, and Warden Joe GRIMES, PAUL SLOAN, Warden RODEAN, Capt. FULLER, Capt. BRENNER, Capt. SOTO, Capt. BOLAND, Sgt. James MILLER and Sgt. MAYS."

---

[1]Plaintiff does not define this abbreviation.

Plaintiff also claims he suffered retaliation by defendant ADAMS on April 23, 2008 and has MHMR restrictions that weren't recognized.  He says the case was graded major and he was dropped from S3 to S4 by defendant Capt. BOLAND[2].  Plaintiff says when BOLAND was informed plaintiff was the next case, BOLAND said, "Is this the one that I need to send to High Security Agg. Seg., or is this the one that I need to send to solitary confinements, or is this the one that I need to take outside in the back of the building and shoot him and bury him in a shallow grave."  Plaintiff claims he had written a grievance against defendant SOTO on March 9, 2008 because SOTO threatened to do him harm and used vulgar language.  Plaintiff said that where the grievance form required him to state what action he requested, he said his life was in danger from Capt. SOTO, Capt. FULLER, Sgt. MILLER, Sgt. GOBLE, Warden GRIMES, CO MAYS, Lt. or Capt. ENGLAND or BRIDGEWATER, CO HEIB, Lt. Ms. BENNETT, Capt. BRENNER, CO HOMER, CO LARSON, and CO EZZELL.

Plaintiff claims the acts and omissions by the defendants violated his Eighth and Ninth Amendment rights, his Fifth and Fourteenth Amendment Due Process rights, his Fourteenth Amendment Equal Protection rights, and the RICO Act.

Plaintiff requests injunctive relief and nominal, compensatory, and punitive damages.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of

---

[2]Plaintiff provides no more facts than are set forth in this summary and does not state what case, what it was about, or who wrote it.

process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[3], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2).  The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions.  42 U.S.C. 1997e(c)(1).  A *Spears* hearing need not be conducted for every *pro se* complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[4].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## THE LAW AND ANALYSIS

As to plaintiff's claim of a RICO violation, the Court notes that "[c]riminal statutes can neither be enforced by civil action nor by private parties."  *Hassell v. U.S.*, 203 F.R.D. 241, 244, (N.D.Tex. 1999)(citing *Kennan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964); see, *United States v. Claflin*, 97 U.S. 546, 24 L.Ed. 1082 (1989)).  Moreover, the Court does not issue advisory opinions concerning whether sufficient evidence exists to support filing criminal charges or concerning other issues.  There is no constitutional right to have a person criminally prosecuted.  *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  The prosecution of criminal actions in the federal courts is a matter solely within the discretion of the Attorney General of the United States, and duly authorized United States Attorneys.  Consequently, any claim for relief because

---

[3]A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[4]*Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing.  A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

of the alleged RICO violation lacks a basis in law and is frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's complaint and his attached statements make clear that, despite his frequent reference to an excessive use of force, at best, he is alleging a claim of negligence against defendant MAYS, not a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  At no point does plaintiff allege any fact to support his allegation that the act was intentional and, in fact, plaintiff also complains that defendant MAYS was careless and negligent.  To show defendant MAYS had a "wanton disreguard [sic] for human life," plaintiff states, "he didn't even file an incident report where an injury could or there could be a possibility [sic] injury involved which makes him negligence [sic] . . .."  Section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care.  *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990); *see, also, Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986)(inmate slipped on pillow left on stairs).  It is clear that plaintiff has failed to state a claim of Eighth Amendment excessive force against defendant MAYS.

Plaintiff also complains defendants MAYS, ALMAROAD, NIXON, and other security and medical officials failed to file a report about the incident in compliance with TDCJ-CID procedures and regulations.  In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff has no "created liberty interest of the regulations of Texas Department of Criminal Justice-Institutional Division".  The failure of an officer to follow agency procedural regulations or even the relevant state law is not, without more, a constitutional violation, because the relevant constitutional minima may nevertheless have been

satisfied.  *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir.

1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.), *cert. denied*, 489 U.S. 1085, 109 S.Ct.

1545, 103 L.Ed.2d 849 (1989); *Baker v. McCollan*, 433 U.S. 137, 146-47, 99 S.Ct. 2689, 2695-

2696, 61 L.Ed.2d 433 (1979).

Plaintiff complains of the medical care he received and has sued defendants

Dr. PAETZOLD, Dr. UY, Asst. Director of Nurses RHONDA GLOVER, Radiology

Tech. RENEE REINING, Radiology Tech. JOANN POPE, Sr. LVN LISA WILLIAMS, and

Supervisor of Medical Records DIANA COLE  in connection with that care.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth

Amendment violation and states a cause of action under Title 42, United States Codes section

1983.  *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976).

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a

substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825,

114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).  However, not every claim of inadequate or

improper medical treatment is a violation of the Constitution.  *Estelle v. Gamble*, 429 U.S. 97,

105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).  A disagreement with a doctor over the method

and result of medical treatment does not require a finding of deliberate indifference.  *Spears v.

McCotter*, 766 F.2d 179 (5th Cir. 1985).  Merely alleging that a prison doctor should have

undertaken additional diagnostic measures or utilized an alternative method of treatment does

not elevate a claim to constitutional dimension.  *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir.

1991).  "[N]egligent medical care does not constitute a valid section 1983 claim."  *Mendoza v.

Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Further, medical records showing sick calls,

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Moreover, a delay which does not aggravate or exacerbate the medical condition does not constitute a constitutional violation. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff has alleged no fact to support a claim of deliberate indifference by defendant GLOVER. She examined him and authorized his transport to Northwest Texas Hospital. Further, plaintiff has alleged no fact to support deliberate indifference by defendant PAETZOLD, the doctor at the hospital who examined plaintiff, ordered x-rays, and diagnosed a broken rib. As to Dr. UY, he examined plaintiff on September 24, ordered x-rays, and diagnosed a bruised rib rather than a broken rib. He also prescribed Naproxen 500 mg. for pain. Although plaintiff complains he didn't receive the Naproxen until two weeks later, he has alleged no fact which would support a claim that this delay was defendant UY's fault or constituted deliberate indifference by him to a serious medical need of plaintiff's. As to defendant REINING, she was the radiology technician who took the x-rays ordered by defendant UY. Plaintiff complains she didn't let him lie down for the x-ray, but required him to stand up in an uncomfortable position and lift his arms, squeezing him in his injured side. If plaintiff was allowed to lie down for the x-rays he received at the hospital, this does not mean he should not be required to stand up for other x-rays. It is withing the training of the technician to determine how best to obtain the

appropriate view of the injury.  Nothing plaintiff has alleged indicates defendant REINING was deliberately indifferent to his serious medical needs.

As to defendant Sr. LVN LISA WILLIAMS, she saw plaintiff in the infirmary for his complaints of pain on October 5, 2007, when he was sent there from his kitchen job, and gave plaintiff a cell pass which lasted from October 5th through October 9th.  Plaintiff says he didn't see her any more after that time.  Further plaintiff has alleged no facts supporting a claim against defendants Radiology Tech. JOANN POPE and Supervisor of Medical Records DIANA COLE.

It is clear that plaintiff has failed to state an Eighth Amendment claim against any of the medical personnel.  He has not even alleged facts which would support a claim of negligence. Plaintiff's claims against defendants  Dr. PAETZOLD, Dr. UY, Asst. Director of Nurses RHONDA GLOVER, Radiology Tech. RENEE REINING, Radiology Tech. JOANN POPE, Sr. LVN LISA WILLIAMS, and Supervisor of Medical Records DIANA COLE lack an arguable basis in law or in fact and are frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff complains that nine days after the incident defendant HOLLIGAN assigned him to a job as kitchen helper and that this act was triggered by retaliatory intent.  A plausible entitlement to relief exists when the allegations in the complaint cross the thresholds separating the "conclusory" from the "factual" and the "factually neutral" from the "factually suggestive." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ___ n.5, 127 S.Ct. 1955, 1966 n.5, 167 L.Ed.2d 929 (2007).  Plaintiff has not presented any factual allegation of any sort to support his conclusory allegation of retaliation by defendant HOLLIGAN and, thus, has failed to state a

retaliation claim against this defendant on which relief can be granted.  In fact, plaintiff also alleges defendant HOLLIGAN was careless and negligent.

Plaintiff appears to feel his work assignment did not take into account his injury; however, plaintiff does not allege defendant UY or any other doctor had imposed a work restriction on him.  He alleges Dr. PAETZOLD told him to rest as much as possible for the first two or three weeks, but he does not say he restricted plaintiff from work.  Further, when plaintiff complained of pain on the job, he was sent to the infirmary, where he received a lay-in pass from defendant WILLIAMS until October 9th, a date three weeks removed from the incident.

Plaintiff also alleges defendant HOLLIGAN violated his medical restriction of no repetitive hand movements by the kitchen job assignment and states it is part of her job to know what restrictions are in his record.  Again, plaintiff, while inferring HOLLIGAN was deliberately indifferent to his serious medical needs, also alleges she was negligent.  Plaintiff does not allege he ever informed HOLLIGAN or anyone else that he felt the kitchen job violation his work restriction and, further, was denied a change to work that did not violate his work restriction.  At best, plaintiff has alleged facts which might support a claim of negligence against defendant HOLLIGAN, however, section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care.  *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990); *see, also, Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986)(inmate slipped on pillow left on stairs).

Plaintiff's claims against defendant HOLLIGAN fail to state a claim on which relief can be granted.

Further, plaintiff's complaint that, after October 9th, the more he complained, the more he was harassed and written disciplinary cases for refusing to work, does not state a claim against anyone.  Plaintiff has not alleged any doctor placed a work restriction on him after October 9th or that defendants ignored such a work restriction.  Thus, disciplinary cases based on plaintiff's refusal to work did not constitute deliberate indifference to a serious medical need.

Plaintiff's complaint that defendant HEIB wrote him a disciplinary case when he fell asleep and wasn't ready to show his I.D. for bed count does not state a claim of constitutional dimension and does not appear to be connected with the events forming the basis for plaintiff's claims in this cause.  To the extent plaintiff is claiming this and all other disciplinary cases were retaliatory, plaintiff has utterly failed to allege facts to support such a claim and has, therefore, failed to state a claim.

To the extent plaintiff is suing defendants BRENNER, FULLER, or any other defendant for a failure to properly investigate and satisfactorily resolve his grievance(s) and other complaints, *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally-protected right to have his grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima.  *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.), *cert. denied*, 489 U.S. 1085, 109 S.Ct. 1545, 103 L.Ed.2d 849 (1989); *Baker v. McCollan*, 433 U.S. 137, 146-47, 99 S.Ct. 2689, 2695-2696, 61 L.Ed.2d 433 (1979).  Plaintiff's claims in this respect lack an arguable basis in law and are frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's vague and conclusory allegation of retaliation from "all staff, and Warden Joe GRIMES, PAUL SLOAN, Warden RODEAN, Capt. FULLER, Capt. BRENNER, Capt. SOTO, Capt. BOLAND, Sgt. James MILLER and Sgt. MAYS" does not contain "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Plaintiff has failed to state a claim of retaliation.

Plaintiff presents a naked allegation that he "was retaliated on by [defendant] ADAMS" on April 23, 2008 and has MHMR restrictions that were not recognized.  Plaintiff provides no facts to support this claim of retaliation and has failed to state a claim of any sort against defendant ADAMS.

As to plaintiff's claim against defendant BOLAND, although plaintiff does not specify the parameters of his claim, it appears he feels defendant BOLAND was not a fair and unbiased disciplinary hearings officer.  Plaintiff does not allege he was not guilty of the disciplinary charge and does not provide any facts to show how his due process rights were violated and does not explain how he thinks his grievance against SOTO was related, if he thinks it was.  Plaintiff has failed to state a claim against defendant BOLAND of any kind.

Lastly, plaintiff's claims against several defendants appear to be based on their supervisory positions and their failure to correct the alleged wrongs; however, the acts of subordinates trigger no individual section 1983 liability for supervisory officers.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999).  A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act

and the constitutional violation sought to be redressed.  *Thompkins v. Belt*, 828 F.2d 298, 304

(5th  Cir.1987); *Douthit v. Jones*, 641 F.2d 345,  346 (5th Cir.1981) (*per curiam*).  Plaintiff has

alleged no fact demonstrating personal involvement by these officials and has alleged no fact

showing any causal connection between their acts or omissions and the alleged constitutional

violation.  Consequently, plaintiff's allegations against these defendants fail to state a claim on

which relief can be granted.

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections

1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the

RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil

Rights Complaint filed pursuant to Title 42, United States Code, Section 1983, by plaintiff

JERRY TYRONE HASTY, also known as JERRY TYRONE HASTY HALIBURTON, be

DISMISSED WITH PREJUDICE AS FRIVOLOUS and FOR FAILURE TO STATE A CLAIM

ON WHICH RELIEF CAN BE GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of September 2009.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).